UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MARK HARVEY REPHEN,                         Civil Action No.:

                Plaintiff,

    -against-                                      **COMPLAINT FOR FRAUD**


                                             **DEMAND FOR JURY TRIAL**

BATEL ABIKZER,
JOHN DOE 1 & JOHN DOE 2, and
FALCON THRIVE CORP LLP

                Defendant(s).
------------------------------------------------------------------X

Plaintiff, MARK HARVEY REPHEN ("Plaintiff"), by and through his attorneys, Edward B. Geller, Esq., P.C., as and for his Complaint against the Defendant(s), BATEL ABIKZER, JOHN DOE 1 & JOHN DOE 2 ( BROKERS), and FALCON THRIVE CORP LLP (hereinafter referred to as "Defendant(s)"), respectfully sets forth, complains and alleges, upon information and belief, the following:

## INTRODUCTION/PRELIMINARY STATEMENT

1.    Plaintiff brings this action on his own behalf for the failure of Defendants to honor an agreement with Plaintiff and seeks damages, declaratory and injunctive relief arising from the Defendants' Breach of Contract.

## **PARTIES**

2. Plaintiff MARK HARVEY REPHEN is a resident of ISRAEL, residing in Israel.

3. Defendant BATEL ABIKZER is a resident in the state of NEW YORK residing at 25 DOLSON ROAD, MONSEY, NY 10952.

4. BATEL ABIKZER either works directly for and/or maintains a desk and works from PHX Financial Inc, an investment bank at 100 Wall Street NY, NY 10005, as relayed to the Plaintiff by the Defendant.

5. Defendant FALCON THRIVE CORP LLP is a NEW YORK company engaged in investment banking with an address at 99 WALL STREET , SUITE 1048, NEW YORK, NY 10017, a virtual office.

6. FALCON THRIVE CORP LLC is entirely owned by BATEL ABIZKER and is a cover corporation for her fraudulent business dealings. BATEL ABIZKER is for all intents and purposes FALCON THRIVE CORP.

7. According to the Defendant Batel Abizker she began her career in investment banking by creating a relationship with Phoenix Financial Services, a New York-based FINRA and SIPC Member, where she has assisted in capital introductions for notable clientele focused on private equity investments. Her client portfolio includes individuals, institutions and multi-national corporations with a global reach. Through her efforts, these individuals and institutions were able to invest in companies such as Palintir, Airbnb, Uber, Lyft, Square, and Epica International. Ms. Abikzer's interests also include actively participating with these and other clients in the private art market under a similar investment banking model. Her client roster in this sector includes family offices, private wealth funds,

foundations, conservators, curators and ultra-high net worth individuals. Ms. Abikzer's primary interests and representations within the private art market encompass Old Masters, Impressionist, Post-Impressionist and Modern artworks. Her assignments have included both buy and sell transactions for collectors whose private collections are valued in the hundreds of millions of dollars. As a consummate client representative with an investment banking background, Ms. Abikzer maintains absolute discretion in all of her dealings and throughout her assignments comports herself with an extreme professional circumspection on which her clients have come to rely. Ms. Abikzer is currently exploring the acquisition of a specialized and established Investment Banking Firm in Europe through which she will institutionalize and expand the international depth and reach of the client service activities in which she specializes.

8. Defendants JOHN DOE 1 & JOHN DOE 2 (THE BROKERS) are allegedly residents in the state of NEW YORK with a business office located at 47th STREET NEW YORK, NY 10017 and are engaged in the buying and selling of jewelry.

## SUMMERY OF THE CLAIMS

9. The claims arise out of Defendants' deliberate and fraudulent misappropriation and conversion of certain monies in the amount of $50,000 in investment capital provided by the Plaintiff, which Defendant Batel Abikizer was to actively manage and invest, such as buying undervalued jewelry to be resold at true value or above value. Batel Abikizer was to use the connections at her disposal to buy and sell the jewelry and other items from either distressed sellers needing quick funds or undervalued jewelry and other

items that would be resold approximately within a week or two for profit at either the true value or a higher value than the true value. Batel Abikizer did this in association with "The Brokers" whom she and her fiancé worked with in the same capacity and who allegedly are jewelers with a business on 47th Street, New York City, NY (the diamond center of New York City) to facilitate such transactions. When the Defendant Batel Abikizer took the Plaintiff's monies she knew that the funds would not be applied towards the designated ventures, and never had a bona fide intention of doing so. The Defendant either solely converted the funds to her own use or did so in conjunction with The Brokers.

10. Based on these facts, Plaintiff asserts causes of action for fraud, breach of contract, conversion, fraudulent conveyance, unjust enrichment, and aiding and abetting fraud as against The Brokers and FALCON THRIVE CORP LLP (BATEL ABIKZER), who received and benefited from the Plaintiff's monies.

## FACTUAL ALLEGATIONS FOR BREACH OF CONTRACT

### The Existence of a Contract

11. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "10" herein with the same force and effect as if the same were set forth at length herein.

12. The Plaintiff was introduced to the Defendant Batel Abikzer by a mutual acquaintance, Nitzan Friedman (who advises Defendant and whom Defendant consults with on business transactions and is located in Israel.)

13. Batel Abikzer works at PHX Financial, Inc, and advised the Plaintiff on several investments that he made with that company in which she and Nitzan made a commission, with Nitzan Freidman being paid directly by the Plaintiff.

14. Based on the recommendation by Nitzan Friedman and his previous business dealings with the Defendant, the Plaintiff took his (Nitzan Friedman's) advice and entered into a business arrangement with the Defendant with a written contract

15. On or about August 2018 the Plaintiff and the Defendant contracted to buy and sell jewelry from distressed sellers with Plaintiff providing the monetary investment of $50,000 and Batel providing her experience and association with the Defendants "The Brokers" who had access to such distressed sellers and access to buyers of such jewelry.

16. A contract was drawn up on August 14, 2018 which stated " Mark Harvey Rephen shall provide $50,000 in investment capital, and Batel Abkizer shall actively manage and invest the $50,000 in investments such as buying undervalued jewelry to be resold at true value or above value, **Mark Harvey Rephen reserved the right to withdraw his investment of $50,000 upon demand , with Falcon Thrive Corp forwarding the funds as directed within a weeks' time. Mark Harvey Rephen shall have on line banking access to the funds and shall receive a debit card for that account.**

WHEREAS, Batel shall use the connections at her disposal to buy and sell jewelry and other items from either distressed sellers needing quick funds or undervalued jewelry and other items that will be resold approximately within a week or two for profit at either true value or a higher that true value.

WHEREAS, Batel can utilize third party persons or brokers to facilitate such transactions."

17. A copy if the August 14, 2018 contract is attached hereto as (Exhibit A).

18. As stated in the contract Batel Abikzer would work with her "third party brokers" "The Brokers" whom she advised the Plaintiff were two jeweler partners located on 47th street in New York City.

19. The Plaintiff, agreeing to the contract, wired $50,000 in cash on August 17, 2018 to the Plaintiff's account at Bank of America located at 222 Broadway, New York, NY

20. Approximately at the end of August 2018 and the beginning of September 2018 Defendant Batel Abizker stated that there was a watch which would cost $15,000 available with a much higher value that can be flipped. The Plaintiff authorized the Defendant to utilize $15,000 from the $50,000 to buy the watch. The Brokers then allegedly bought a rolex watch from a distressed person for approximately $15k.

21. The Plaintiff inquired when the watch would be flipped. The Defendant Batel Abikzer stated numerous times on the phone that it would be flipped and not to worry. After approximately a month the defendant Batel Abikzer stated that the watch was sold by The Brokers.

22. Although the watch was flipped there was no real profit. Batel and The Brokers received approximately $500 in profit and according to Batel Abikzer the third-party broker received their commission.

23. On approximately September 12, 2018 Batel Abikzr informed the Plaintiff over the phone that the two 47th street partners "The Brokers" bought 2 bracelets which cost about $35,000 dollars and that they could flip them for double or triple the amount.

24. The Plaintiff on or about the same date contacted Nitzan Friedman

concerning the jewelry transaction, who informed the Plaintiff that it was good deal and not to worry as he was in communication with the Defendant.

25. The Plaintiff thereafter in September of 2018 requested Defendant numerous times for the remaining funds in the account to be sent back due to financial difficulty. The funds as required to be sent back within a week under the contract were not sent back until November of 2018. The Defendant in conversation with the Plaintiff consistently made excuses as to why the funds were not returned or ignored the Plaintiff's requests as to when the funds would be sent back, until she responded affirmatively in November and sent back the remaining funds which were allegedly still in the Bank

26. On October 8, 2018 the Plaintiff contacted the Defendant Batel Abikzer thru the watsup app to see if there was any movement on the jewelry. The Defendant stated: "Not yet. Everything is just picking up from the holidays this week. It's Columbus Day today so everyone's off but I think it's going to be a really busy and active month." The month was not busy or active and jewelry was not sold.

27. On October 12, 2018 the Plaintiff contacted the Defendant Batel Abikzer thru watsup again and wrote: "Hi Batel, how much cash is in the account? I need what's available asap to pay bill." The Defendant Batel Abikzer did not respond until October 15, 2018 on wats up and stated she will call later. The Plaintiff spoke to the Defendant and again Defendant stated the jewelry cost about $35,000 and there should have been $15,000 left in the account.

28. On October 18, 2018 the Plaintiff using the watsup app contacted the Defendant Batel Abikzer to see how it was progressing with selling the jewelry. The Defendant did not reply to the Watsup request.