29. On Oct 22, 2018 the Plaintiff gave the Defendant Batel Abikzer constant instructions to sell the jewelry at cost if necessary and to again return the funds. The Defendant in conversation stated that the market was quiet and better to wait till Christmas to sell. The Plaintiff in reply instructed her again to sell the jewelry and return the funds immediately as this was not the business of flipping jewelry that he had contracted with her to do.

30. The Defendant Batel Abikzer stated that they (The Brokers) would sell it within two weeks for sure but again refused to identify them by name, phone number, or address as requested by the Plaintiff even though the Plaintiff demanded their identities then and numerous times before over the phone. The Brokers did not sell the jewelry within two weeks and the remaining funds in the account were still not returned. Batel further stated the remaining funds would be sent back by Thursday or Friday the latest. The funds were not returned by Thursday or Friday.

31. Starting with the October 22, 2018 conversation the Plaintiff requested several times for the remaining funds to be transferred back to his account. The conversations went as proceeded: October 22, 2018 conversation:

Plaintiff: How much cash is there out of the 50.

Defendant: I told them you need the money in two weeks. So, they anticipate to have one of the bracelets sold this week, so you have liquidity to pay your bills, so Thursday, Friday the latest cause I don't want to close bank accounts, as I opened them specifically for these investments. (There was only supposed to be one bank account for the $50,000.00 .(the Bank of America account). The existence of any other bank account for the business was not authorized by the Plaintiff. Apparently there was also a Wells Fargo Bank

account.)

Plaintiff: Batel at this point I can't wait a month. So please tell them to sell the jewelry at purchase price and return the 50 by end of the week.

Defendant: Harvey I would give them two weeks if you can to sell the full amount. Then try to have the one piece sold this week. I don't think they need till the 22nd of November.

Plaintiff: Two weeks to sell the full amount and then they can return the 50 and reinvest the profit if there is any.

Defendant: Ok so two weeks to sell if not full principle back. So not have them try to sell one this week just let them have the two weeks to sell the full lot.

Plaintiff: Yes, they should sell and if there is significant profit above the 50, use that for reinvestment.

Defendant: Ok sounds good I'm gonna call them right now.

October 29, 2018 conversation:

Plaintiff: Please make sure the 50k will be sent back on time.

November 5, 2018 conversation:

Plaintiff: Will the money be sent today?

Defendant: As I mentioned yesterday, they are waiting for their funds to clear and then they will send it back to me. So, might be tomorrow.

November 6, 2018 conversation:

Plaintiff: When will the funds be sent?

Defendant: Harvey, I've spoken to them just now they are working on returning the funds and making sure there won't be any losses on merchandise.

November 7, 2018 conversation :

Plaintiff: When will that be done? Have the funds cleared I do not believe it should take more than a day or two. Please update on when the funds will be sent and how much is in the Wells Fargo account.

November 8, 2018 conversation:

Defendant: Good news as I spoke to them today, they sold the items just haven't released the merchandise till the funds on their end clear. I would imagine everything will be done with them by Friday the latest. I will check for you in the morning to be exact. Doing everything I can to expedite it for you.

November 9, 2018 conversation:

Plaintiff: How soon will the funds be sent

Defendant: Waiting to speak with them. Will circle back with you as soon as the call comes in.

Plaintiff: Any word? Fridays almost over I expect the funds to be transferred today.

November 10, 2018 conversation:

Defendant: They told me they are working on it. They just called me, so I will touch base with you after Shabbat. It will all be sorted out by Monday.

November 12, 2018 conversation:

Plaintiff: Its Monday have they sent the funds. If not please send the remaining 14k to my bank even if it means closing the wells Fargo account.

32. On November 14, 2018 the Defendant wired back $12,763 and on November 19, 2018 the Defendant wired back $5200 for a combined total of

$17,963.00. This being months after the instructions for the return of the money were given. The conversation went as follows: November 14, 2018 conversation:

    Plaintiff:    Are you sending all the money back today

    Defendant:    I'm at Bank of America now I'm wiring $12,763 now to your First Republic Account, seeing if the check that's on hold till the 16th can be released sooner since they took the funds from the other bank and the remaining will be sent on the 16th. Trying to get it from them in a check form, as my accountant suggested not deposit it in cash to my business account.

    November 15, 2018 conversation:

    Plaintiff:    Batel did you make the deposit the funds haven't arrived.

    Defendant:    Bank of America confirmed that First Republic received the funds. If you didn't get it yet, then they may have not released it yet.

    Plaintiff:    Thank you I will forward to my banker to check.

    November 16th, 2018 conversation:

    Plaintiff:    The wire arrived when will the remainder be sent.

    Defendant:    Will make another wire on Monday and probably the following day after that let's speak Sunday.

    November 19, 2018 conversation:

    Plaintiff:    Please let me know when the wire is sent. Did you wire me today?

    Defendant:    I did one wire today will do the other tomorrow.

    November 20, 2018 conversation:

    Plaintiff:    Did you wire today?

    November 21, 2018 conversation:

Plaintiff: I received the second wire of 5800 where is the rest of the 50k?

Defendant: I am waiting for the remaining funds today. I've asked them to wire it as I don't feel comfortable depositing it in the form of cash as my account suggested otherwise.

Plaintiff: How long will that take to do. (no reply)

November 26, 2018 conversation:

Plaintiff: Batel did you receive the remaining funds? When will it be wired"?

Defendant: I spoke with them yesterday they said they will have it sent to me this week in electronic form.

November 29, 2018 conversation:

Plaintiff: Have they sent the wire where exactly is the money?

Defendant: Waiting to hear back I know they are working on it. Putting pressure on my end.

Plaintiff: If they don't have it by tomorrow, I will be filing a law suit. I don't know who they are, but I will know shortly. This has taken too long, and I will also be filing a police complaint. I'm not interested in their excuses."

33. The Defendant never replied or communicated with the Plaintiff thereafter and never returned the remainder of the funds.

34. During the entire time the Plaintiff was in business with the Defendant she refused to disclose the identities of the "third-party Brokers" she was using to assist in her transactions per the demands of the Plaintiff.

35. The Plaintiff also never had access to the bank account nor did he receive the debit card linked to the account per the contract signed on August 14, 2018, although this was requested numerous times as well from the Defendant.

36. While the Plaintiff was communicating thru the watsup ap with the Defendant Batel Abikzer the Plantiff met with Nitzan Friedman, the Defendant's friend and advisor and expressed his concern that the Defendant has stolen his funds.

37. Nitzan Friedman informed the Plaintiff that if he could not hold on to his money, he deserved to have it stolen, thereby leading the Plaintiff to believe that Defendant Batel Abikzer intended to steal the Plaintiffs money from the beginning and that Nitzan Friedman might have received some of the funds.

38. As to the Plaintiff's other investments in PHX Financial he became aware that Defendant Batel Abikzer gave Nitzan Friedman a "commission" for bringing the Plaintiff to her.

39. The Defendant Batel **Abikzer fraudulently converted and stole Plaintiff's money for herself, and there were no brokers and no jewelry bought and sold. Or in the alternative the Defendant Batel Abikzer, along with Defendants John Doe 1 and John Doe 2 "the brokers", stole Plaintiff's money and never bought or sold any jewelry, or refused to return the money as required under the contract. The Defendant lied about the Brokers going to wire or send a check to her as there was no brokers to send the money back. Further, if the The Brokers do exist and they have Plaintiff's money, why is the Defendant consistently refusing to identify them and allow the Plaintiff to communicate directly with them as the Plaintiff requested numerous times.**

40. The Defendant Batel Abikzer in her two wires of $12,763 on November 14,

2018 and $5300 on November 19, 2018 shows that the funds were not in the bank account as she stated prior and were placed back into the holding account in Bank of America. If the funds were there then one wire would have sufficed on one day as opposed to two wires on two separate days. The Defendant had been using the funds without permission for her own use.

## PERFORMANCE BY THE PLAINTIFF

41. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "41" herein with the same force and effect as if the same were set forth at length herein.

42. Plaintiff upheld his end of the contract and wired $50,000 in cash on August 17, 2018 to Plaintiff's account at Bank of America.

## BREACH OF CONTRACT

43. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "43" herein with the same force and effect as if the same were set forth at length herein.

44. As described above, Plaintiff's signing of agreement constituted a valid contract.

45. Defendant executed the Agreement but failed to uphold the Agreement to act accordingly when the Defendant failed to provide the Plaintiff with online access and a debit card to the account, by failing to provide the names of the third-party brokers with whom the

Defendant was affiliated for jewelry transactions and for failing to provide a refund of the funds in part within the required time frame and by failing to return the entire funds as required by the contract. Defendant further breached the contract by failing to actually use the funds for the purchase of jewelry.

## CONVERSION

46   Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "46" herein with the same force and effect as if the same were set forth at length herein.

47   Instead of properly using Plaintiff's money for the intended purposes of buying and selling jewelry, the Defendant Batel Abikzer by herself or in collusion with JOHN DOE 1 & JOHN DOE 2 (The Brokers) used and benefited from the money themselves.

48   Upon information and belief, Defendants Batel Abikzer, JOHN DOE 1 & JOHN DOE 2 stole the money from the Plaintiff which was their sole intent from the beginning.

49.   By reason of the foregoing, as of the date of this complaint, Plaintiff Mark Harvey Rephen has been in damaged in an amount to be determined by the court, and no less than $50,000.

## FRAUD

50   Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "50" herein with the same force and effect as if the same

were set forth at length herein.

51. Defendant Batel Abikzer either alone, or in collusion with JOHN DOE 1 & JOHN DOE 2 (the Brokers) represented to the Plaintiff that they would buy and sell jewelry and other items with the Plaintiff's sum of $50,000 from either distressed sellers needing quick funds or undervalued jewelry and other items that will be resold approximately within a week or two for profit at either true value or a higher that true value.

52. In tendering his monies to the Defendants, Plaintiff reasonably and in good faith relied on the Defendant's representations and assurances that the funds he provided would be used for such purposes as intended.

53. At the time the Defendant Batel Abikzer either alone, or in collusion with JOHN DOE 1 & JOHN DOE 2 made the above representations, she knew they were not going to use the monies for the designated purposes but intended to steal the money from the Plaintiff.

54. By reason of the foregoing, Plaintiff Mark Harvey Rephen has been damaged in an amount to be determined by the court, but not less than $50,000.

## FRAUDULENT CONVERGENCE

55. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "55" herein with the same force and effect as if the same were set forth at length herein.

56. Upon information and belief, at the time the Plaintiff paid Defendant Batel Abikzer alone, or in collusion with JOHN DOE 1 & JOHN DOE 2, she had no intention of using the Plaintiff's monies to purchase jewelry for profit, but rather to fraudulently convert the funds to their own use.

57. The Defendant's intent was to steal the Plaintiffs money with the fraudulent cover of purchasing jewelry and flipping it for profit.

58. By reason of foregoing, as of the date of this complaint, Plaintiff Mark Harvey Rephen has been damaged in an amount to be determined by the court, but no less than $50,000.

## UNJUST ENRICHMENT

59. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "59" herein with the same force and effect as if the same were set forth at length herein.

60. The Defendants were not entitled to the funds deposited by the Plaintiff.

61. The Defendants wrongfully stole and benefited from the funds which were supposed to be used on the Plaintiff's behalf as an investment.

62. As a result, the Defendants have been unjustly enriched at the expense of the Plaintiff.

63. By reason of the foregoing, Plaintiff Mark Harvey Rephen has been damaged in an amount to be determined by the court, but not less than $50,000.

## AIDING AND ABBETTING FRAUD

64. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "64" herein with the same force and effect as if the same were set forth at length herein.

65. Upon information and belief, Defendants JOHN DOE 1 & JOHN DOE 2 (if they even exist) were aware of the fraud being perpetrated against the Plaintiff.

66. By accepting the money from Batel Abikzer with the knowledge of the fraud they were intentionally perpetrating, the Defendants JOHN DOE 1 & JOHN DOE 2 substantially assisted in the perpetration of the fraud.

67. By reason of the foregoing, Plaintiff Mark Harvey Rephen has been damaged in an amount to be determined by the court but not less than $50,000.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

68. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "68" herein with the same force and effect as if the same were set forth at length herein.

69. Defendants owed Plaintiff a duty to avoid negligently inflicting severe mental and emotional distress upon Plaintiff, which continues currently. Not only did Defendants steal monies from the Plaintiff but it was intentional and planned, as confirmed by Nitzan Friedman who informed the Plaintiff that if he could not hold on to his money, he deserved to have it stolen (Referring to the Defendant stealing the funds).

70. Defendants caused Plaintiff to suffer severe mental and emotional distress by plotting to steal $50,000 from his person.

71. As a direct and proximate result of the wrongful actions and/or omissions of Defendants, Plaintiff suffered humiliation, embarrassment, severe anxiety, pain and mental anguish, all to his damage.

72. As a direct and proximate result of the intentional and/or negligent and/or reckless infliction of emotional distress, Plaintiff demands consequential, special and general damages in such amounts as shall be proven at trial.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered "1" through "73" herein with the same force and effect as if the same were set forth at length herein.

74. Defendants had a duty to avoid intentionally inflicting severe and emotional distress upon Plaintiff.

75. Defendants breached their duties by causing Plaintiff to suffer extreme and egregious mental and emotional distress, by intentionally and/or recklessly, willfully, and maliciously misleading him regarding his rights per their contract agreement.

76. As a direct and proximate result of the intentional wrongful actions and conduct and/or omissions of Defendants as alleged above, Plaintiff's health and wellbeing were damaged, causing Plaintiff severe pain and mental anguish, all to his damage.

77. As a direct and proximate result of the intentional, willful, wanton and malicious acts and conduct towards and against Plaintiff, Defendants caused Plaintiff harm, including the infliction of emotional distress and pain, mental anguish and anxiety, and Plaintiff demands consequential, special, general and punitive damages in such amounts as will be proven at trial.

## DEMAND FOR TRIAL BY JURY

78. Plaintiff respectfully requests a trial by jury for all claims and issues in its Complaint to which he is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

    A.    Compensatory damages for loses suffered as a result of the Defendant's conduct.

    B.    Common law punitive damages in the amount of $250,000;

    C.    Attorney's fees

    D.    Damages, punitive damages and a constructive trust be imposed on the property taken and the benefits derived from the Defendants' conduct;

    E.    Actual damages and/or any unjust enrichment caused by actual and punitive damages, unjust enrichment, emotional distress, attorney fees, costs, expenses and restitution in the amount of $250,000

    F.    Such other relief as the court deems just and proper.

Dated:      New York, New York
            January 15, 2019

                            Respectfully submitted,

                            By: _____
                            Edward B. Geller, Esq, P.C.
                            15 Landing Way
                            Bronx, New York 10464
                            Tel:(914)473-6783
                            Phone: (914)473-6783

                     *Attorney for the Plaintiff* MARK HARVEY REPHEN

To:     FALCON THRIVE CORP LLP
        99 WALL STREET SUITE 1048
        NEW YORK, NY 10005

        JOHN DOE 1 & JOHN DOE 2
        47 TH STREET
        NEW YORK, NY 10017

        BATEL ABIKZER
        25 DOLSON ROAD
        MONSEY, NY 10952

        PHX FINANCIAL INC.
        100 WALL STREET
        New York, NY 10005

        *(Via Prescribed Service)*

        Clerk,
        United States District Court, Southern District of New York
        *(For Filing Purposes)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO.:

MARK HARVEY REPHEN,

                              Plaintiff,

   -against-

                              Defendant(s).

,
BATEL ABIKZER,
FALCON THRIVE CORP LLP,
JOHN DOE 1 & JOHN DOE 2

------------------------------

                      **COMPLAINT**

------------------------------

# AFFIRMATION

I, Mark Harvey Rephen, under the penalty of perjury, deposes and say:

I am the Plaintiff in the above entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_____

Mark Harvey Rephen

_____ [Printed]

**Plaintiff**